Joseph O. SALADINO, pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 03–2871T, 04–1367T.

United States Court of Federal Claims.

Jan. 14, 2005.

Joseph O. Saladino, Palmdale, CA, plaintiff pro se.

David D. Gustafson, Washington, DC, with whom was Assistant Attorney General Eileen J. O'Connor, for defendant. Robert N. Dorosin, on the briefs.

## ORDER

CHRISTINE ODELL COOK MILLER, Judge.

The Government seeks invocation of the court's power pursuant to RCFC 11 to sanction a *pro se* party for frivolous filings and contentions. The Government has successfully defended dozens of lawsuits brought in the United States Court of Federal Claims by plaintiff in his own name or on behalf of others, and some cases are still pending. The majority of these lawsuits represent a purportedly assigned claim from his clients, as plaintiff, a non-attorney, earns money by charging people to prepare their tax returns and by filing lawsuits on their behalf, a business preliminarily enjoined by a United States District Court in *United States v. Saladino*, CV04–2100 FMC (C.D.Cal., Oct. 18, 2004) (order enjoining, in part, Mr. Saladino from furthering his business or other-

wise encouraging taxpayers to evade assessment and collection). Each lawsuit raises the same, universally rejected contention that wages are not subject to taxation.

The particular actions that prompt defendant's motions, consolidated case Nos. 03–2871T and 04–1367T ("*Saladino I*" and "*Saladino II*," respectively),[1] already have been dismissed. *Saladino v. United States*, 62 Fed. Cl. 782 (2004). Each action remains subject to this court's jurisdiction pending this ruling on defendant's motions for sanctions, *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (ruling that Fed.R.Civ.P. 11 determinations are collateral proceedings and can be determined after termination of the principal suit), filed in both actions contemporaneously with defendant's motions to dismiss. Def.'s Mtn. filed Aug. 18, 2004 (in *Saladino I*); Def.'s Mtn. filed Sept. 21, 2004 (in *Saladino II*). Argument is deemed unnecessary.

## PROCEDURAL BACKGROUND

Defendant painstakingly details the history of all the actions that plaintiff filed in his own name and those filed under different names, all listing plaintiff's own address. Relevant to defendant's motions for sanctions is plaintiff's prosecution of other lawsuits before the Court of Federal Claims insofar as the results informed—or should have informed—plaintiff's understanding of the law prior to filing the instant actions.

1. This court's opinion dismissing Nos. 03–2871T and 04–1367T referred to these actions, respectively, as *Saladino III* and *Saladino IV. See Saladino v. United States*, 62 Fed.Cl. 782 (2004). This order refers to the actions upon which the motions are based as *Saladino I* and *Saladino II*. The dismissal opinion used the designations "III" and "IV" for reasons associated with defendant's res judicata arguments and the use of prior, identically named actions, which are not germane to defendant's instant motions.

2. *Saladino v. United States*, No. 03–2762T (Fed. Cl. July 19, 2004) (involuntary dismissal); *Saladino v. United States*, No. 03–2776T (Fed.Cl. Mar. 25, 2004) (voluntary dismissal); *Saladino v. United States*, No. 03–2667T (Fed.Cl. Feb. 6, 2004) (unpubl.); *Saladino v. United States*, No. 03–2666T (Fed.Cl. Feb. 3, 2004) (voluntary dismissal); *Saladino v. United States*, No. 03–2674 (Fed. Cl. Dec. 12, 2003) (unpubl.); *Saladino v. United States*, No. 03–2348T (Fed.Cl. Dec.12, 2003) (unpubl.); *Saladino v. United States*, No. 03–2210T

Defendant begins with the undisputed fact that plaintiff initially filed fourteen separate lawsuits in the Court of Federal Claims. *Saladino I*, dismissed by this court on November 2, 2004, is the last of what defendant characterizes as the "first wave." Def.'s Br. filed Aug. 18, 2004, at 6. Each lawsuit claimed that wages are not taxable, and all pursued relief owed not to plaintiff himself but to his customers.[2] Defendant notes that in at least two opinions dismissing different actions, both issued prior to the filing of *Saladino I* and *Saladino II*, other judges entered orders explaining why plaintiff's claims could not proceed, both based on jurisdictional deficiencies and for failure to state a valid claim for relief. *See Saladino v. United States*, No. 03–1816T (Fed.Cl. Oct. 1, 2003) (unpubl.); *Saladino v. United States*, No. 03–2243T (Fed.Cl. Sept. 30, 2003) (unpubl.).

Plaintiff initiated a second wave of litigation[3] on May 18, 2004, with the filing of *Anderton v. United States*, No. 04–872T (Fed. Cl. filed May 18, 2004). Although *Anderton* named plaintiffs other than himself, it listed Mr. Saladino's Palmdale, California address and his telephone number as plaintiffs' telephone number. *Anderton* was the first of seventy-seven similar cases. All these actions were transferred to the undersigned, and all were dismissed voluntarily after this court entered orders to show cause why de-

(Fed.Cl. Oct. 3, 2003) (unpubl.); *Saladino v. United States*, No. 03–2262T (Fed.Cl. Oct. 2, 2003) (unpubl.); *Saladino v. United States*, No. 03–1816T (Fed.Cl. Oct. 1, 2003) (unpubl.); *Saladino v. United States*, No. 03–1905T (Fed.Cl. Sept. 30, 2003) (unpubl.); *Saladino v. United States*, No. 03–1910T (Fed.Cl. Sept.30, 2003) (unpubl.); *Saladino v. United States*, No. 03–2034T (Fed.Cl. Sept. 30, 2003) (unpubl.); *Saladino v. United States*, No. 03–2243T (Fed.Cl. Sept. 30, 2003) (unpubl.).

3. Defendant colorfully explains:

Undaunted by his repeated failures in his first batch of cases in this Court, uninstructed by this Court's and the Federal Circuit's decisions, unchastened by this Court's dismissals of his prior cases, and unintimidated by the complaint served on him in the injunction suit, Mr. Saladino launched a much more ambitious second phase of frivolous litigation[.]

Def.'s Br. filed Aug. 18, 2004, at 10.

fendant's motions for sanctions should not be granted should plaintiffs not accept dismissal. *See, e.g., Anderton,* No. 04–872T (Fed. Cl. July 16, & 28, 2004).

Although a more detailed factual recitation can be found in this court's opinion in *Saladino,* 62 Fed.Cl. 782, a brief summary gives the background to defendant's present motions. Plaintiff filed *Saladino I* on December 30, 2003. As with all the other actions listed above and in note 2 *supra,* plaintiff sought the return of allegedly overpaid income taxes for several years on a theory that wages are not subject to income tax. He filed this claim on behalf of his clients, Edwin L. and Alice M. Geiersbach, the taxpayers whose income taxes were at issue and who ultimately would be entitled to the refund. Untutored by any of his prior failures, two of which were unsuccessful lawsuits seeking the same relief for the identical taxpayers—a blatant res judicata defect that served as additional fuel for defendant's motions to dismiss—plaintiff litigated *Saladino I* vigorously until sometime before September 7, 2004, when he stated in his opposition brief to defendant's motion to dismiss (pending before the judge to whom the case had been assigned) that he "was generally under the opinion that this instant case was dismissed months ago." Pl.'s Mtn. for Leave filed Sept. 7, 2004, ¶ 1. Not only had plaintiff proceeded on the assumption that his motion for voluntary dismissal in three other actions had included *Saladino I,* but he already had filed *Saladino II,* another action on behalf the same taxpayers, on the same theory, and for the same tax years. He also stated that he "had no intention of prosecuting this instant case[,] . . . [but] if the Court will grant Plaintiff leave to amend, Plaintiff wishes to keep this amended case active." *Id.* ¶¶ 6–7. Otherwise, he asked for a dismissal without prejudice.

Plaintiff nevertheless continued to prosecute his case, and he filed additional motions later in September and continued to re-brief and amend his opposition to defendant's motion to dismiss *Saladino I.* This court heard argument on defendant's motions to dismiss and ruled in favor of defendant, ruling both on defendant's arguments against jurisdiction and on the merits of the claim, in addition to holding that principles of res judicata and collateral estoppel bar the claims *ab initio. See Saladino,* 62 Fed.Cl. 782. *Saladino II,* filed on August 20, 2004, sought essentially the same relief on the same theory. This court dismissed *Saladino II* for much the same reasons as it did *Saladino I. See id.*

Defendant now seeks the imposition of monetary sanctions consisting of an order to pay its reasonable attorneys' fees in defending the *Saladino I* and *II* cases and an order to pay a sum into the court as a penalty. Defendant also asks for an order prohibiting plaintiff from filing on his own or another's behalf any action raising the same objection to paying income taxes.

## DISCUSSION

Defendant moves this court, pursuant to RCFC 11, for an order imposing a sanction on a *pro se* plaintiff. Rule 11 authorizes a court to sanction an attorney or unrepresented party for deviation from its requirements. At issue is plaintiff's failure to discharge the duty imposed by Rule 11(b)(2), which requires plaintiff to certify when presenting his papers and arguments to the court that "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" The decision to award sanctions currently is committed to the discretion of the court.[4] *See Power Mosfet Techs., L.L.C. v. Siemens AG,* 378 F.3d 1396, 1415 (Fed.Cir.2004) (upholding refusal to award sanctions under Fed.R.Civ.P. 11). The Federal Circuit has held that its rulings under Fed.R.Civ.P. 11 are applicable to RCFC 11, which is identical. *See Judin v. United States,* 110 F.3d 780, 784 (Fed.Cir. 1997).

---

**4.** Pending legislation would make the award of sanctions mandatory under RCFC 11's counterpart in the Federal Rules of Civil Procedure.

Lawsuit Abuse Reduction Act of 2004, H.R. 4571, 108th Cong. (2004) (one of four versions currently pending).

1. *Whether the conduct is sanctionable*

The specific conduct that defendant indicts is plaintiff's act of filing both lawsuits and his continuing attempts through his amended pleadings and oppositions to defendant's motions to maintain the following two arguments: (1) Wages are not subject to income taxation; and (2) plaintiff has standing to assert a claim for refund owed to taxpayers whom he assisted in the preparation of their tax returns. This court previously has explained at length why both arguments are legally erroneous. *See Saladino,* 62 Fed.Cl. at 793–95.

■ A legal argument that ultimately is incorrect, however, does not necessarily equate to one that is not warranted by existing law or by a "nonfrivolous argument for [its] extension." RCFC 11(b)(2). Even if the contention is unwarranted by existing law or cannot be supported by a nonfrivolous argument for its extension, the conduct is only sanctionable if the party making the contention has done so without a prior reasonable inquiry. In other words, the appropriate inquiry is what the party should reasonably have discovered *"before* the suit is filed, not after." *Judin,* 110 F.3d at 784. Of course, the duty of inquiry exists at each instance that the party advances a particular argument before the court. *See* RCFC 11(b) (certification applies whenever attorney or unrepresented party "present[s] to the court (whether by signing, filing, submitting, or later advocating)"). The standard for considering whether a violation occurred is "reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (applying Fed. R.Civ.P. 11, which is applicable to RCFC 11 per *Judin,* 110 F.3d at 784). The ultimate question is whether plaintiff has conducted a "reasonable inquiry" into his legal basis. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 984 (Fed.Cir.2000).

■ This court notes, as it did when reviewing defendant's motions to dismiss in *Saladino I* and *Saladino II,* that plaintiff is unrepresented and accordingly is held to a lower standard than represented parties. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, just as his *pro se* status did not immunize plaintiff from the consequences of the fatal flaws in his arguments that lead to dismissal of his suits, it also does not render him immune from the requirements of Rule 11 and the authority of a court to impose sanctions. The Federal Circuit explained, when sanctioning a *pro se* appellant under Fed. R.App. P. 38:

> [Appellant's] pro se status certainly does not prohibit us from sanctioning him for a frivolously filed appeal. Of course, we never impose sanctions lightly, and are particularly cautious in the case of a pro se litigant, "whose improper conduct may be attributed to ignorance of the law and proper procedures." But we and our sister circuits have not hesitated to impose sanctions in cases "where even a non-lawyer should have been aware that his conduct was frivolous." Such is unquestionably the case here.
>
> Given his long history of litigation and relitigation of the same issues, we can only conclude that [appellant] "by this time is certainly not without some practical experience with the law."

*Constant v. United States,* 929 F.2d 654, 658 (Fed.Cir.1991) (citations omitted).

Plaintiff filed *Saladino I* and *Saladino II* on December 30, 2003, and August 20, 2004, respectively. As of those dates, this circuit applied settled law that plaintiff's theory that wages are not taxable is a palpably unsound legal argument. Not only did the Federal Circuit announce in *Ledford v. United States,* 297 F.3d 1378 (Fed.Cir.2002), that the argument had been universally rejected, but that even raising it was considered to be "sanctionable," *id.* at 1381.

As he is proceeding *pro se,* plaintiff might claim the benefit of the doubt that one would be unable to discover on his own that wages are actually taxable—common sense notwithstanding. Taxpayer in *Ledford* was *pro se,* and he could not secure any latitude for the same argument. Even were the Federal Circuit to relax the condemnation of such a theory that it voiced in *Ledford,* it stands to reason that plaintiff would have known that

his theory was discredited when another judge of the Court of Federal Claims ruled against him in a separate, previously filed case: "[I]t must be noted that the theory apparently underlying [plaintiff's] filing, that the federal income tax does not reach compensation for personal labor, has been rejected by precedent binding on this Court." *Saladino v. United States*, No. 03–2243, 2003 WL 22765835, at \*1 (Fed.Cl. Sept. 30, 2003) (unpubl.) (citations omitted). Judge Wolski issued that ruling on September 30, 2003, three months prior to plaintiff's filing *Saladino I* and almost one year prior to his filing *Saladino II*. He also issued the same ruling against plaintiff in yet another action, *Saladino v. United States*, No. 03–2262, at 1 (Fed. Cl. Oct. 3, 2003) (unpubl.), which also was issued prior to plaintiff's filing these actions.

The above-cited orders applied in clear terms the binding precedent of *Ledford* to reject his claims. Had plaintiff read *Ledford*, he would have informed himself that the Federal Circuit unequivocally warned litigants that pressing such claims would be sanctionable: "Indeed, every court that has considered the matter has found this argument to be wholly without merit—so much so that merely raising it is considered sanctionable." *Ledford*, 297 F.3d at 1381.[5]

It is not only plaintiff's claims on the merits that are unwarranted by preexisting law. Plaintiff also sought relief on behalf of nonparty taxpayers. This impediment to standing was not as readily discernible in terms of what plaintiff should have reasonably been able to learn on his own without the aid of counsel. Although constitutional standing "is 'a complicated specialty of federal jurisdiction[,]'" *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 841 n. 1 (9th Cir.1976) (quoting *United States ex. rel. Chapman v. Fed. Power Comm'n*, 345 U.S. 153, 156, 73 S.Ct. 609, 97 L.Ed. 918 (1953)), plaintiff was well informed about this glaring deficiency, as with his theory that wages are not taxable, because the Court of Federal Claims has ruled against plaintiff's same standing theory to bring other actions. Specifically, Judge Wolski's orders in prior filed Nos. 03–2243 and 93–2262, discussed above, dismissed those complaints on the grounds that plaintiff had no standing: "[T]he overriding problem with [plaintiff's] filing is that he has no standing to assert a claim on behalf of [the taxpayer]. [Plaintiff] is not an attorney admitted to this Court's bar and cannot practice law in this Court by filing a suit on behalf of the taxpayer." *Saladino*, No. 03–2243, 2003 WL 22765835 at \*2; *Saladino*, No. 03–2262, at 2.

As if these rulings, which cited binding precedent, should not have been sufficiently convincing for plaintiff, still other judges previously had ruled against plaintiff's claim and the same standing arguments, as well. *E.g., Saladino v. United States*, No. 03–2210T (Fed.Cl. Oct. 3, 2003) (unpubl.) ("[Plaintiff] lacks standing to file a claim on behalf of these taxpayers."); *Saladino v. United States*, No. 03–2034T (Fed.Cl. Sept. 30, 2003) (unpubl.) ("Because plaintiff, acting *pro se* before the court, has failed to assert a personal refund claim, but instead has seemingly asserted the claim on behalf of an Edwin and Alice [Geiersbach], of Grain Valley, Missouri, said claim does not cross the court's jurisdictional threshold."); *see also Saladino v. United States*, No. 03–2667 (Fed.Cl. Feb. 6, 2004) (unpubl.) (collateral estoppel; jurisdiction); *Saladino v. United States*, No. 03–2348T (Fed.Cl. Dec.12, 2003) (unpubl.) (dismissal for lack of standing); *Saladino v. United States*, No. 03–1945T (Fed.Cl. Aug. 20, 2003) (unpubl.) (same). In sum, other judges of the Court of Federal Claims have informed plaintiff when they dismissed his

---

5. *Ledford* cited the following authority for this proposition:

E.g., *Casper v. Comm'r*, 805 F.2d 902, 906 (10th Cir.1986) ("Merely raising the argument that value received for labor does not constitute taxable income, but rather constitutes a nontaxable exchange of property, justifies the imposition of sanctions."); *Connor v. Comm'r*, 770 F.2d 17, 20 (2d Cir.1985) (per curiam) ("Wages are income. The argument that they are not has been rejected so frequently that the very raising of it justifies the imposition of sanctions." (internal citation omitted)); *Lovell v. United States*, 755 F.2d 517, 519–20 (7th Cir.1984) (per curiam); *see also United States v. Connor*, 898 F.2d 942, 943–44 (3d Cir.1990) (noting that "[e]very court which has ever considered the issue has unequivocally rejected the argument that wages are not income," and collecting cases).

*Ledford*, 297 F.3d at 1381–82.

multiple complaints before he filed *Saladino I* and *Saladino II*. Plaintiff therefore was not required to make any "inquiry" into the law to ascertain the baselessness of his legal claims and claim to standing; it was handed to him over and over again.

Plaintiff's *pro se* status, which may in other circumstances provide some assistance in defending against a Rule 11 charge, cannot save him today. Plaintiff's claims and arguments were frivolous, and, because he seems not to recognize that the existing law is squarely against him, he was unable to articulate any argument whatsoever for a change in the law. All of this information was known prior to filing both *Saladino I* and *Saladino II*. Plaintiff's conduct in filing and maintaining these actions is sanctionable based either on an entirely inadequate pre-filing review or a flagrant disregard of Rule 11's requirements amounting to bad faith.

Plaintiff's response to defendant's charges is inadequate. He claims that he had no intention of prosecuting *Saladino I* once he obtained rulings in other actions that his claims would be unsuccessful, at least in their then-current form.[6] Apparently agreeing that his conduct is sanctionable, he had asked for dismissal of all his actions without prejudice. However, the court dismissed *Saladino I* with prejudice on the merits of the tax claims and *Saladino II* without prejudice for lack of jurisdiction. *See Saladino*, 62 Fed.Cl. at 793–94, 796–98.

The record overwhelmingly supports a finding that plaintiff was aware, or should have been aware, that his claims had no basis in law or fact before he filed *Saladino I*. The mere act of filing was therefore conduct in violation of Rule 11.[7] The same is true for *Saladino II*.

Not only has plaintiff abused the court's process by filing frivolous lawsuits, he has continuously flouted the procedures that the court and his opponent rely upon for orderly prosecution of claims. Each time that defendant filed a dispositive argument in its papers, plaintiff retorted not with counter-argument, but by filing new pleadings or by invoking new statutes which he believes assist his cases. With each successive filing, plaintiff added factual allegations, thereby confusing the record and requiring the court to wrest from his filings whether plaintiff was moving to amend his pleadings. Even plaintiff's method of filing proved burdensome. *See Saladino*, 62 Fed.Cl. at 784–86. He violated this court's rules on the form of filing by, for example, filing numerous documents together as one, some of which he would paginate sequentially and others which he would not; some were separately titled and some not. He would then file an "amended" or "corrected" version of the prior filing, which added new material. *See id.* at 785–86. Whether these tactics could be construed to be harassing attempts to confuse his opponent, they have unduly burdened the court and would be sanctionable,

---

6. Plaintiff also argues that certain claims or theories were new and that he had partially been seeking relief for his own tax refund. Even if several claims had not been addressed by prior court order, plaintiff still has to account for each claim that he filed, *i.e.*, those claims filed on behalf of other taxpayers.

7. It is noteworthy that in *Fuselier v. United States*, 63 Fed.Cl. 8 (2004), the Court of Federal Claims warned another *pro se* plaintiff engaging in almost identical tactics that his conduct was sanctionable. *Fuselier* involved a similar attempt by a *pro se* plaintiff who, as Judge Block put it, "demonstrated a propensity to beat dead horses in more ways than one." *Id.* at 9. (Defendant characterizes plaintiff in the *Saladino* cases as one with "stubbornness, unteachability, and cynicism[.]" Def.'s Br. in *Saladino I* filed Sept. 10, 2004, at 7.) The *pro se* plaintiff in *Fuselier* also claimed that wages are not subject to taxation.

The court dismissed plaintiff's claims for lack of jurisdiction, and although it denied the Federal Government's motion for Rule 11 sanctions, it did so with a strong admonition:

> While the court will not impose sanctions at this time, plaintiff should take heed that his actions *are* sanctionable. Indeed, plaintiff's persistent repetition of frivolous arguments in multiple cases while attempting to engage in unauthorized law practice only compounds the likelihood that serious sanctions will be imposed.

*Id.* at 12. Instead of sanctions, Judge Block ordered a screening procedure, similar to the one imposed on this plaintiff in *Saladino*, 62 Fed.Cl. at 798, for that plaintiff's future filings and ordered the Clerk of the Court to send a copy of the order to a state attorney disciplinary board to act on plaintiff's attempts to engage in the unauthorized practice of law. *Fuselier*, 63 Fed.Cl. at 12.

as well. *Cf. In re Violation of Rule 28(c)*, 388 F.3d 1383, 1385 (Fed.Cir.2004) (declining to impose sanctions for violations of appellate procedural rules, but noting that strict compliance with rules of court is required and that "serious violations of applicable rules, whether or not 'inadvertent,' will potentially subject counsel to sanctions"). The burden of plaintiff's frivolous filings on the administration of justice, including the Office of the Clerk of the Court, has been chronicled. *See Saladino,* 62 Fed.Cl. at 785–86.

### 2. *Imposition of sanctions*

Rule 11 does not require a court to sanction a party or an attorney for conduct violating its requirements; a court "may ... impose an appropriate sanction[.]" RCFC 11(c). In *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), the Supreme Court explained that Rule 11's "central goal" is of deterrence; its "central purpose ... is to deter baseless filings ... [and] streamline the administration and procedure of the federal courts." 496 U.S. at 393, 110 S.Ct. 2447.[8] With this purpose in mind, this court views plaintiff's actions as the quintessential egregious conduct calling for sanctions.

Plaintiff admits in his pleadings that he receives compensation for assisting persons in the preparation of their tax returns and for filing these lawsuits on their behalf. His business practice includes the filing of these lawsuits. He accepts fees for filing these inane lawsuits without any pretense at pursuing a legitimate claim. He has accepted fees without obtaining a license to practice law or seeking the advice of counsel. This course of conduct does not depict a sympathetic *pro se* plaintiff who attempts to seek redress for an alleged wrong committed against him and others similarly situated. If that were the case, perhaps a court could be somewhat forgiving of his failure to understand the import of prior rulings against these claims. Instead, this plaintiff files his cases without reflection or apparent acknowledgment of prior dismissals. When it becomes apparent that his claims are doomed in a particular action, plaintiff simply attempts to elude a ruling by asking for a dismissal or attempting to replead, as he did in *Saladino I* and *Saladino II.*[9] The Supreme Court anticipated exactly this type of maneuvering:

Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred.... If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to "stop, think and investigate more carefully before serving and filing papers."

*Cooter & Gell,* 496 U.S. at 398, 110 S.Ct. 2447 (quoting Amendments to Federal Rules of Civil Procedure, 97 F.R.D. 165, 192 (1983) (Letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules) (Mar. 9, 1982)).

It is under this authority that this court finds Rule 11 would be ill-served without imposing sanctions for the conduct of this plaintiff.

### 3. *The nature of the sanction*

■ Rule 11 authorizes the court to impose an "appropriate" sanction, one that is "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." RCFC 11(c)(2). A court can impose "directives of a

---

8. The Supreme Court decided *Cooter & Gell* prior to the 1993 amendment to Fed.R.Civ.P. 11, when that formulation of the rule required the imposition of sanctions. The 1993 amendment removed the mandatory language. The Federal Circuit, however, applies *Cooter & Gell's* view of the purpose of the statute notwithstanding the current discretionary standard. *See View Eng'g, Inc.,* 208 F.3d at 984 (citing *Cooter & Gell* when discussing the purpose of Rule 11).

9. At oral argument on defendant's motions to dismiss, plaintiff stated that he had "abandoned the merits" of *Saladino I,* but then contradicted himself by stating that "there are several merits in the [*Saladino I*] case, some of which we have abandoned and some of which we have not." Transcript of Proceedings, *Saladino v. United States,* Nos. 03–2871T & 04–1367T at 23–24 (Fed.Cl. Oct. 20, 2004). The court advised plaintiff that it would only accept a voluntary dismissal conditioned on a dismissal with prejudice; he refused.

nonmonetary nature, an order to pay a penalty into court, or ... an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.*

One sanction proposed by defendant is a bar prohibiting plaintiff from filing any additional lawsuits seeking relief for nonparty taxpayers on similar grounds. Such a sanction would be one step further than the restrictions already imposed by this court's opinion dismissing *Saladino I* and *Saladino II. See Saladino,* 62 Fed.Cl. at 798 (imposing screening requirements on plaintiff's future filings).

In addition, defendant seeks monetary sanctions in the nature of attorneys' fees and a penalty paid into court. Defendant, however, has not provided the court with authority that monetary sanctions should be imposed before a lesser sanction is imposed or a warning is given that monetary sanctions will be imposed.

Defendant claims to have spent over $30,000.00 defending not only *Saladino I* and *Saladino II,* but also the seventy-seven other cases before the undersigned and the cases before other judges of the Court of Federal Claims. Moreover, defendant substantiates only $23,260.45. Defendant explains that it does not seek full recovery of its attorneys' fees because it believes that a penalty paid into court is more appropriate. The amount sought is based on the fee that plaintiff advertises on the Internet to his customers for his services, $1,095.00, to which plaintiff admits.[10] Defendant seeks a multiplier of seventy-seven, the number of cases that plaintiff filed on his clients' behalf, for a total of $84,315.00. Thus, defendant asks that plaintiff be ordered to pay a total of $84,315.00, $23,260.45 of which represents attorneys' fees and the remaining amount, $61,054.55, a penalty paid into court.

Defense counsel has represented the Government commendably; he has brought his considerable analytical skills to the task of organizing a welter of plaintiff's filings; he has suffered ridiculous personal attacks and responded to plaintiff's supplemental and amended briefs. Although plaintiff has embarrassed himself and toyed with the Government by prosecuting multiple baseless claims, it would be inappropriate for the court to supply original legal research to support a requested sanction. Unfortunately, defendant does not cite case law that will justify sanctioning plaintiff for attorneys' fees in cases that either were not decided by the undersigned or that are not the subject of its motions, *i.e.,* its motions were not filed in the other cases. Moreover, the court cannot discern a basis for apportioning the legal fees allocable to *Saladino I* and *Saladino II.*

Defendant does provide authority for imposing a monetary penalty based solely with respect to plaintiff's actions in *Saladino I* and *Saladino II. View Engineering, Inc.,* 208 F.3d at 988, is authority that it is proper to take into account the offending party's "ability to pay." Because it is only using the "base" amount charged by plaintiff (defendant claims that some fees were in excess of $3,000.00), defendant argues that plaintiff has the ability to pay that what he received for his services. Applying plaintiff's "base fee" of $1,095.00 to plaintiff's pursuit of a refund for *Saladino I* and *Saladino II,* twice that amount, for a sum of $2,190.00, is a reasonable and fair penalty.

This reduction in the amount of penalty, from over $80,000.00 to just over $2,000.00, is in line with a more restrained approach to sanctioning a *pro se* party for unwarranted legal theories and frivolous filings. *See Constant,* 929 F.2d at 658 (sanctioning a *pro se* appellant only after appellant had twice been warned that he would be sanctioned under Rule 11 for making the same arguments in the future).

The undersigned is convinced that the screening procedure that the undersigned and another judge have imposed, *see Saladino,* 62 Fed.Cl. at 798; *Fuselier,* 63 Fed.Cl. at 12, will not deter plaintiff from continuing to

---

10. Plaintiff admitted that this amount was accurate in his answer to the complaint in another action, *United States v. Saladino,* No. CV04–2100 FMC (C.D. Cal., answer filed May 27, 2004), which is attached to defendant's motion for sanctions, filed August 18, 2004, in *Saladino I,* of which this court takes judicial notice.

solicit plaintiffs or from burdening the court with frivolous complaints. Therefore, plaintiff should be barred for a limited period from prosecuting his claims in the Court of Federal Claims on his own or another's behalf.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motions are granted insofar as plaintiff's conduct in prosecuting *Saladino I* and *Saladino II* is sanctionable under RCFC 11.

2. By July 30, 2005, plaintiff shall pay to the Court of Federal Claims as a penalty the sum of $2,190.00, by certified, cashier's, or bank check, made payable to the Clerk of the Court.

3. Plaintiff is barred from filing claims for refund of taxes in the Court of Federal Claims, on his own or another's behalf, for the earlier of ten years from the date upon which this order is entered or his admission to the bar of the Court of Federal Claims, whichever earlier occurs.