544

**Lavern C. FAST HORSE, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 11–264L.**

United States Court of Federal Claims.

Oct. 12, 2011.

Lavern C. Fast Horse, appearing pro se, Springfield, South Dakota.

Barbara M.R. Marvin, with whom was Ignacia S. Moreno, Assistant Attorney General,

specificity, both in terms of the language to be    redacted and the reasons therefor.

United States Department of Justice, Environmental and Natural Resources Division, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

Plaintiff Lavern C. Fast Horse filed a *pro se* complaint in this Court on April 27, 2011, naming U.S. President Barack Obama, U.S. Secretary of the Interior Kenneth Salazar, and South Dakota Governor Dennis Daugaard in a suit for money damages. The matter comes before the Court on the United States' June 24, 2011 motion to dismiss under Rule of the Court (or "RCFC") 12(b), for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the following reasons, Defendant's motion is GRANTED.

### Background

Plaintiff is an inmate at the Mike Durfee State Prison in Springfield, South Dakota. (Compl.-hw 3.)[1] He is a member of the Lakota Sioux Indian tribe. (Pl.'s Resp. 7.) Mr. Fast Horse contends that South Dakota lacks jurisdiction over Sioux criminal defendants and apparently challenges the legitimacy of the state's establishment. (Compl.-tw 1–2); (Compl.-hw 12.) He seeks money damages on behalf of himself and a class of Sioux Indians incarcerated over the years by the state of South Dakota and its predecessor, the Territory of Dakota. (Compl.-tw 2); (Compl.-hw 11.)

Mr. Fast Horse submits that the Great Sioux Reservation persists as a sovereign entity pursuant to the Fort Laramie Treaty of 1868, 15 Stat. 635 (1868), precluding South Dakota from exercising jurisdiction over Sioux criminal defendants. (Compl.-tw 1–2.) In his complaint, Plaintiff invoked the writ of habeas corpus, arguing that any past or present conviction of a Sioux Indian in South

Dakota court "must be rendered null and void." (Compl.-hw 5.) He requested damages of $208 per day for his "18 years of illegal confinement" ($1,366,560 in total), and a "jury trial for punitive damages" pursuant to the Indian Claims Commission Act (or "ICCA"), ch. 959, 60 Stat. 1049 (1946) (repealed 1978), or, in the alternative, pursuant to a *Bivens* action.[2] *Id.* at 11.

Defendant moved to dismiss on six grounds: (1) the Court lacks jurisdiction to adjudicate claims against parties other than the United States; (2) Plaintiff may not represent other South Dakota inmates in a *pro se* action; (3) the Court lacks jurisdiction to provide habeas corpus relief; (4) Plaintiff's claims are both untimely and beyond the scope of the ICCA; (5) the Court lacks jurisdiction to adjudicate Plaintiff's specific claims for damages; and (6) Plaintiff otherwise failed to state a claim upon which relief can be granted. *See* (Mot. to Dismiss 2–3.)

In his July 21, 2011 response to the Government's motion to dismiss, Mr. Fast Horse apparently disregarded both his request for habeas corpus relief and his complaint against Governor Daugaard. *See* (Pl.'s Resp. 3) ("This is not a habeas or appellate procedure. This is a lawsuit against the President and Secretary of D.O.I."). However, Plaintiff reiterated his prayer for "financial compensation" under either the ICCA or *Bivens,* and added a prayer for "punitive relief" under the Act of June 3, 1920, ch. 222, 41 Stat. 738 (1920). *Id.* at 13, 15. In his response, Mr. Fast Horse requested damages of $10 billion for the class of Sioux criminal defendants he purports to represent. *Id.* at 14.

Defendant replied to Plaintiff's response on August 18, 2011. On August 29, 2011, Mr. Fast Horse moved for summary judgment. The Court issued an order on September 7, 2011, staying any briefing on Plaintiff's mo-

---

**1.** Plaintiff's complaint contains a two-page typewritten section, followed by a twelve-page handwritten section numbered (1) through (12). For clarity, references to the respective sections will include the suffix "-tw" or "-hw" as appropriate.

**2.** In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the U.S. Supreme Court recognized a limited, private right of ac-

tion in tort against federal agents who commit constitutional violations under the color of federal law. A *"Bivens* action" allows for the victims of unconstitutional conduct to pursue damages against federal agents in their individual capacities despite the absence of a statute conferring such a right. *Id.; Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

tion for summary judgment until after this ruling on Defendant's motion to dismiss. By leave of the Court, Mr. Fast Horse filed additional pleadings in support of his motion for summary judgment on September 12 ("Pl.'s Mem. I") and September 19, 2011 ("Pl.'s Mem. II").

## Discussion

### A. The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims.

■ Subject matter jurisdiction is a threshold issue to be considered before proceeding to the merits of a case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Where subject matter jurisdiction over a claim is at issue, the plaintiff must establish the Court's jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir.1988) (internal citations omitted). Pleadings submitted to the Court by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, this relatively relaxed standard does not lessen the duty of a pro se litigant to establish subject matter jurisdiction where it is at issue. *See Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995). "In determining whether a motion to dismiss should be granted, the [ ] Court may find it necessary to inquire into jurisdictional facts that are disputed." *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991). Where subject matter jurisdiction is lacking, the Court must dismiss the claim. RCFC 12(h)(3).

■ The Tucker Act, 28 U.S.C. § 1491(a)(1) (2006), operates as a grant of subject matter jurisdiction for "specified types of claims against the United States" and as "a waiver of sovereign immunity with respect to those claims." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (internal footnote omitted). However, the legislation does not create a substantive right to recover against the United States. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). A Tucker Act plaintiff must "assert a claim against the government under a 'mon-ey-mandating' constitutional provision, statute, or regulation." *Adkins v. United States,* 68 F.3d 1317, 1321 (Fed.Cir.1995) (citing *United States v. Connolly,* 716 F.2d 882, 886–87 (Fed.Cir.1983) (en banc)).

■ The Indian Tucker Act, 28 U.S.C. § 1505 (2006), specifically applies to disputes against the United States arising "in favor of any tribe, band, or other identifiable group of American Indians." Like the general Tucker Act, the Indian Tucker Act grants jurisdiction and waives sovereign immunity for claims against the United States, but does not create a substantive right to recover. *United States v. Navajo Nation,* 556 U.S. 287, 129 S.Ct. 1547, 1551, 173 L.Ed.2d 429 (2009) (internal citations omitted). An Indian Tucker Act plaintiff must identify a right to recover "under the Constitution, laws or treaties of the United States, or Executive orders of the President, or ... which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group." 28 U.S.C. § 1505 (2006).

To this end, Plaintiff asserts a right to recover "financial compensation" under the ICCA, or the U.S. Constitution in the guise of a *Bivens* action. (Pl.'s Resp. 13.) He further asserts a right to recover "punitive relief" under the Act of June 3, 1920. *Id.* at 15. However, since Mr. Fast Horse fails to establish the Court's subject matter jurisdiction, the Court cannot reach the merits of his requests.

### 1. Plaintiff's Claim under the Act of June 3, 1920 Is Time–Barred.

The Act of June 3, 1920, ch. 222, 41 Stat. 738 (1920), was a special legislative grant to provide "the Sioux Tribe of Indians" with a mechanism to bring longstanding claims against the United States. Act of June 3, 1920, 41 Stat. 738 (1920). The legislation provided a forum for the adjudication of claims "under any treaties, agreements, or laws of Congress, or for the misappropriation of any of the funds or lands of said tribe or band or bands thereof." *Id.* at 738. It required claims to be filed within five years of the Act's passage. *Id.* at 739. As such, the Act of June 3, 1920 cannot provide Plaintiff

with a substantive right to recover in this Court.

### 2. *Plaintiff's Claim under the Indian Claims Commission Act Is Time–Barred.*

The Indian Claims Commission Act, ch. 959, 60 Stat. 1049 (1946) (repealed 1978), was the first "mechanism of general applicability by which Indian tribes could litigate treaty claims against the United States." *United States v. Sioux Nation of Indians,* 448 U.S. 371, 384, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). The ICCA established the Indian Claims Commission (or "ICC") in 1946, to resolve claims against the United States "that had arisen *previously.*" *Id.* at 384–85, 100 S.Ct. 2716 (emphasis added). The ICCA vested the ICC with jurisdiction over claims arising before the legislation's passage, for a five-year period. ICCA, 60 Stat. at 1052. Thereafter, no untimely claim "[could] be submitted to any court or administrative agency for consideration, nor ... be entertained by the Congress." *Id.* The ICCA is not available to Mr. Fast Horse as a basis for relief.

### 3. *Plaintiff's Claim Is Beyond the Scope of the Indian Claims Commission Act.*

In 1978, Congress amended § 20(b) of the ICCA to grant the Court of Claims jurisdiction to review a single 1974 Indian Claims Commission decision on the merits. Act of Mar. 13, 1978, 92 Stat. 153 (1978); *see also Sioux Nation of Indians v. United States,* 220 Ct.Cl. 442, 601 F.2d 1157 (1979) (en banc) (affirming the ICC in large part); 33 Ind. Cl. Comm'n 151 (1974). The 1978 legislation triggered a separation of powers controversy, which ultimately led to the *United States v. Sioux Nation of Indians* decision. *See* 448 U.S. 371, 100 S.Ct. 2716 (affirming the Court of Claims). Plaintiff references the 1980 Supreme Court opinion to support his request for ICCA relief. *See* (Compl.-hw 7); (Pl.'s Resp. 2.) However, that opinion concerns only the 1974 ICC matter and the aforementioned separation of powers issues. The success of the Sioux litigants in 1980, acting pursuant to the narrowly targeted 1978 legislation, is entirely inapposite to Plaintiff's present request.

Nowhere in the text of the ICCA, as amended, is there a provision empowering individual Indians with claims postdating 1946 to sue in this Court or any other tribunal pursuant to that statute. Indeed, Congress passed the ICCA to address claims concerning communal wrongs, not prayers for individual relief. *Fort Sill Apache Tribe of State of Okla. v. United States,* 201 Ct.Cl. 630, 477 F.2d 1360, 1365 (1973). Mr. Fast Horse cannot proceed in this Court on an ICCA theory.

### 4. *The Court Lacks Jurisdiction over Bivens Actions.*

In *Bivens,* 403 U.S. 388, 91 S.Ct. 1999, the Supreme Court recognized a private right of action for damages, against federal officials in their individual capacities, for constitutional torts. *Id.; Green,* 446 U.S. at 18, 100 S.Ct. 1468. However, tort claims fall outside of this Court's jurisdiction. *L'Enfant Plaza Props., Inc. v. United States,* 227 Ct.Cl. 1, 645 F.2d 886, 892 (1981); *see also* 28 U.S.C. § 1491(a)(1) (2006) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States ... for liquidated or unliquidated damages in cases not sounding in tort."). Further, the Tucker Act grants the Court jurisdiction over claims against the "United States," not claims against the United States' individual officers. *Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997). Mr. Fast Horse, however, pursues his claims against President Obama and Secretary of the Interior Salazar, not the United States itself. *See* (Pl.'s Mem. II) ("The respondents, i.e., defendants are the ones that I am sueing here not the United States of America." (spelling original)). For the above reasons, Mr. Fast Horse's *Bivens* action is beyond the purview of the Court.

### 5. *Plaintiff May Not Represent Individuals Outside of His Immediate Family Before the Court.*

Under Rule 83.1(a)(3) of the Court, a *pro se* plaintiff may represent only himself and "immediate family" members. "While the RCFC do not specifically define 'immedi-

ate family,' the term generally is limited to one's 'parents, spouse, children, and siblings.'" *Cherokee of Lawrence Cnty., Tenn. v. United States*, 2006 WL 5668261, at *3 (Fed.Cl. Sep. 1, 2006) (quoting Black's Law Dictionary 273 (8th ed. 2004)). Tribal kinship does not fall within the ambit of that definition. *See Id.* Mr. Fast Horse may or may not be a tribal attorney. *Compare* (Pl.'s Resp. 5) ("So as a tribal attorney for the Oglala Lakota Sioux Tribe, for 35 Years, and a jail house lawyer for all the years I have periodically been incarcerated, I have a complete understanding of the law."), *with id.* at 9 ("Technically you really don't have to be a lawyer to be a lawyer."). Regardless, Plaintiff is not a member of the Bar of this Court, a prerequisite to prosecuting a case before the Court. RCFC 83.1(a)(1)(B); *see also Fuselier v. United States*, 63 Fed.Cl. 8, 11 (2004). Accordingly, any claims Mr. Fast Horse has set forth on behalf of incarcerated Sioux Indians, other than immediate family members, must be barred from the Court in their present form.

For the above reasons, Mr. Fast Horse cannot establish subject matter jurisdiction in this Court.

B. *Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.*

In reviewing a motion to dismiss, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [Plaintiff's] favor." *Boyle v. United States*, 200 F.3d 1369, 1372 (2000). Plaintiff must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Accordingly, Plaintiff must provide more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

Plaintiff wholly failed to provide a "well-pleaded," "short and plain" complaint, which "plausibly give[s] rise to an entitlement for relief." Most glaringly, he failed to identify a consistent term for the "illegal confinement" for which he seeks recompense and punitive damages. *Compare* (Compl.-hw 12) ("for 18 years of illegal confinement"), *with* (Pl.'s Resp. 8) ("for 7+ years of illegal incarceration"). As another example, Mr. Fast Horse expressly denied pursuing other collateral attacks on his South Dakota conviction in one filing but then indicated the opposite in a subsequent filing. *Compare* (Compl.-hw 3) ("Petitioner has made no other post conviction relief, to challenge the judgment of the conviction."), *with* (Pl.'s Resp. 7) ("I am already in the U.S. Court of Appeals for the Eighth Circuit from St. Louis Missouri." (spelling original)). As Plaintiff's complaint is neither well-pleaded nor plausible, it cannot survive scrutiny under *Twombly* and *Iqbal.*

For the above reasons, Mr. Fast Horse fails to state a claim upon which relief can be granted.

### Conclusion

Based upon the foregoing, Defendant's motion to dismiss under RCFC 12(b)(1) and 12(b)(6) is GRANTED. The Clerk is directed to dismiss Plaintiff's complaint without prejudice.

IT IS SO ORDERED.