Robert B. **BEALE**, Plaintiff,

v.

The **UNITED STATES** of America, Defendant.

No. 05–1132 T.

United States Court of Federal Claims.

Nov. 16, 2005.

Robert B. Beale, Pro Se.

**OPINION AND ORDER**

BLOCK, Judge.

Robert B. Beale, a *pro se* plaintiff, filed a complaint claiming "common law immunity" from federal income taxes and simultaneously filed an application for a writ of habeas corpus and a motion for a preliminary injunction. Since this court is one of limited subject matter jurisdiction and Mr. Beale's complaint and other pleadings fail to allege facts that satisfy any of the court's jurisdictional predicates, the court has no alternative but to *sua sponte* dismiss the case for lack of jurisdiction.

In a twenty-one page document self-styled as an application for writ of habeas corpus, plaintiff provides the background upon which his claims in this court lie. Among others, he maintains that he is a "free Sovereign" who was born in the "Maryland Republic" and, as such, should not be subject to federal income tax laws because he does not consider himself to fall within the legal definition of the term "taxpayer" as it is used in various tax laws. Plaintiff's pleadings total nearly seventy pages of mostly non-sensible conspiracy theory allegations, but this court is able to surmise two general allegations upon which plaintiff seems to primarily rest.

First, plaintiff maintains that the social security number assigned to him at birth created a social security trust account bearing plaintiff's name, and to which plaintiff is nothing more than a trustee. According to plaintiff, he is "neither surety for nor accommodation party for this trust." Application for Writ of Habeas Corpus at 2. As plaintiff's conspiracy theory goes, however, sometime

after his birth he was fraudulently induced by the federal government "to become surety or accommodation party to this trust by signing IRS, employment, and bank documents that were created for this fictitious [social security trust account named Robert B. Beale]." *Id.* at 5. Plaintiff argues that the obligation to pay federal taxes is voluntary, and that he should not be considered a "taxpayer" because he never "voluntarily" filed any tax returns and similar documents, but only did so under duress. *See id.* at 7–23.

Second, plaintiff maintains that he is guaranteed certain unalienable rights by the Constitution of the United States of America, among which are his rights to "life, liberty and the pursuit of happiness (property)." *Id.* at 6 (parenthetical original). According to plaintiff, the federal government may not impose a tax or place a lien on these rights, because "unalienable rights are rights against which no lien can be established, precisely because they are un-a-lien-able." *Id.*

"A-lien-ability" or not, it appears from plaintiff's filings that plaintiff failed to pay income tax in tax years 1992–1995. On March 2, 2005, the Internal Revenue Service ("IRS") assessed a tax lien of $456,632.67. Compl. Ex. 7.

As a result of the unpaid taxes, plaintiff claims that the defendant has restrained his liberty by placing liens on his property, seizing his property, and burdening him with attorney's fees. Comp. at 7. Relatedly, because he has failed to comply with tax laws, plaintiff keenly anticipates criminal prosecution:

> The Respondent IRS has, without regulatory authority, placed liens on the property of the petitioner; has filed Notice's [sic] of Levy against the personal assets of the petitioner; has seized property of the petitioner, raided his place of business, subpoenaed his employees, burdened him with attorney fees, and now has undertaken a criminal investigation and prosecution against the petitioner, all under color of law without regulatory authority.

Compl. at 5. In his efforts to stave off these criminal and civil proceedings, plaintiff has turned to this court for help. In particular, he has requested two specific forms of relief. First, plaintiff seeks a writ of habeas corpus granting him "immunity from prosecution of federal law" and ordering the "criminal investigation being conducted by the Assistant U.S. Attorney [to] cease and desist." Compl. at 28. Second, plaintiff seeks a court order in the form of a preliminary injunction directing the Department of Justice to "cease their civil prosecution of [plaintiff] to attempt to seize [plaintiff's] assets without a lawful levy or tax liability." *Id.* Since this court lacks jurisdiction over both these requested forms of relief, however, it is not able to consider the merits of plaintiff's allegations.

## I. DISCUSSION

*Pro se* litigants are afforded great leeway in presenting their issues to the court. *See, e.g., Forshey v. Principi,* 284 F.3d 1335, 1357–58 (Fed.Cir.2002). "An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Hughes v. Rowe,* 449 U.S. 5, 15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). This broad latitude extended to *pro se* litigants can not, however, trump this court's limited subject matter jurisdiction. The Court of Federal Claims "has jurisdiction only where and to the extent that the government has waived its sovereign immunity, and any waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *Ledford v. United States,* 297 F.3d 1378, 1381 (Fed.Cir.2002). The Tucker Act—a purely jurisdictional statute—operates as a waiver of sovereign immunity in the Court of Federal Claims for non-tort suits against the United States premised on the Constitution, statute, regulation, or an express or implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1); *United States v. Testan,* 424 U.S. 392, 397, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). "The courts have consistently held, however, that the Claims Court's jurisdiction is limited to such cases where the Constitution or a federal statute requires the payment of money damages as compensation for the violation." *Testan,* 424 U.S. at 401–02, 96 S.Ct. 948.

Subject-matter jurisdiction may be challenged at any time by the parties or by the

court, *sua sponte, see Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004), and this court "obviously has jurisdiction to determine whether it has jurisdiction over a particular matter." *Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999). To survive the court's *sua sponte* review of subject matter jurisdiction, (*see* RCFC 12(b)(1)), the plaintiff must point to a statute that specifically confers power upon this court to grant the relief he has requested. *Martinez v. United States,* 48 Fed.Cl. 851, 856 (2001), *aff'd,* 281 F.3d 1376 (Fed.Cir.2002).

## 1. The United States Court of Federal Claims Lacks Jurisdiction Over an Application for Writ of Habeas Corpus

■ As the Court of Appeals for the Federal Circuit has noted, this court lacks jurisdiction over Mr. Beale's habeas petition. *See Ledford v. United States,* 297 F.3d 1378, 1380–81 (2002). In *Ledford,* the Federal Circuit identified two primary reasons why jurisdiction did not obtain in that case, and both apply with equal force in this case:

> First, the habeas statute gives federal courts the authority to issue a writ only if the petitioner is "in custody," 28 U.S.C. § 2241 (2000), and therefore there is a jurisdictional requirement "that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook,* 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989). Although he is the subject of a criminal investigation by the IRS, because Mr. Ledford has not alleged that he is currently in custody, habeas jurisdiction does not lie. Second, and equally important, the habeas statute does not list the Court of Federal Claims among those courts empowered to grant a writ of habeas corpus, and the trial court therefore is without power to entertain Mr. Ledford's petition.

*Id.* As in *Ledford,* plaintiff in this case has not alleged that he is actually "in custody" as a result of the pending criminal investigation into his affairs. Quite the contrary, in his self-styled "Motion for Preliminary Injunction," plaintiff specifically concedes that "[t]he claim for relief is a stay of a future act yet to be performed, such as indictment or the arrest of the plaintiff." Mot. for Prel. Inj. at 1. Even if plaintiff was already incarcerated, however, it appears that this court would still lack jurisdiction over his petition for habeas because the United States Court of Federal Claims is not one of the courts identified in 28 U.S.C. § 2241 as having jurisdiction over a habeas petition. *See* 28 U.S.C. § 2241; *Ledford,* 297 F.3d at 1381; *Stephenson v. United States,* 58 Fed.Cl. 186, 191–93 (2003).

## 2. The United States Court of Federal Claims May Not Enjoin the IRS from Collecting an Assessed Tax

■ Although this court generally has jurisdiction over claims for tax refunds, it lacks subject matter jurisdiction over actions by taxpayers against the Internal Revenue Service for injunctive or declaratory relief of the type sought by plaintiff here. *See Ledford,* 297 F.3d at 1380. As the Federal Circuit has noted, this court "has jurisdiction only where and to the extent that the government has waived its sovereign immunity, and any waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Overall Roofing & Constr. Inc. v. United States,* 929 F.2d 687, 688 (Fed.Cir.1991) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). In order to establish jurisdiction over his claims for injunctive relief precluding the enforcement and collection of tax liens, then, plaintiff:

> must point to some statute specifically conferring power upon the trial court to grant his desired relief. This he has failed to do—perhaps because no statutory authority exists that would grant the Court of Federal Claims the power to enjoin an IRS collection proceeding.

*Ledford,* 297 F.3d at 1381.

Perhaps the greatest jurisdictional hurdle plaintiff must overcome in his quest for equitable relief—in this or any other federal court—is the Anti–Injunction Act, a federal statute that, rather than granting this court jurisdiction, specifically prohibits any suits "for the purpose of restraining the assessment or collection of any tax ... *in any court* by any person." 26 U.S.C. § 7421

(emphasis added); *see also Ledford,* 297 F.3d at 1381. Although there are a few exceptions to the rule in § 7421, none of those exceptions apply in this case.[1] *See* § 7421(a).

## II. CONCLUSION

Since this court lacks jurisdiction over any of the forms of relief plaintiff's complaint and ancillary filings seek, the only proper course of action is for the court to *sua sponte* dismiss the complaint, without prejudice, for lack of subject matter jurisdiction. "In order to justify the dismissal of a *pro se* complaint, it must be 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Platsky v. CIA,* 953 F.2d 26, 28 (2d Cir.1991) (quoting *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). That is the case here, as plaintiff's complaint fails to demonstrate the type of facts that might give rise to jurisdiction in this court. Accordingly, the clerk of the court is **ORDERED** to dismiss the case.

**It is so ordered.**

---

1. One of these enumerated exceptions confers jurisdiction on this court in cases involving the collection of penalties. *See* 26 U.S.C. § 6672(c). As a prerequisite to the court's jurisdiction over the validity of a penalty, however, the plaintiff must first furnish a bond to the court covering 1½ the amount of the assessed penalty. *Id.*